IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FRANCHISE LOAN TRUST 1998-I and<br>CAPTEC FRANCHISE TRUST 1999-1,<br><br>v.<br><br>S&A FEE PROPERTIES SPE 2, L.L.C. and<br>S&A LEASED PROPERTIES SPE 2, INC., | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 4:08CV306 |

**ORDER AND REPORT AND RECOMMENDATIONS OF UNITED STATES
MAGISTRATE JUDGE**

The Court, having considered the Original Complaint, Plaintiffs' Emergency Motion for Hearing on Emergency Application for the Appointment of a Receiver (Dkt. 2), Plaintiffs' Emergency Application for the Appointment of a Receiver (Dkt. 3) filed in this case, the affidavit submitted, and the points and authorities filed in support of the Emergency Application for the Appointment of a Receiver, these matters having been referred to the undersigned by the Honorable Richard A. Schell, now orders and recommends as follows:

**HEARING**

The Emergency Motion for Hearing on Emergency Application for the Appointment of a Receiver (Dkt. 2) has been GRANTED. The Court set and heard the Application for the Emergency Motion for the Appointment of a Receiver at 2:00 p.m. on Thursday, August 21, 2008.

**APPOINTMENT OF RECEIVER**

Having considered testimony from Michael Randall, a Vice President of Bank of New York Mellon Corporation, the Servicer for the Plaintiffs in the above-referenced matter, argument from

counsel, Plaintiffs' Exhibits 1-6, which are promissory notes and deeds of trust that are representative of the promissory notes and deeds for all twenty three (23) properties at issue in this lawsuit, a demand letter, and an acceleration notice, the Court recommends that Plaintiffs' Emergency Application for the Appointment of a Receiver (Dkt. 3) be GRANTED as set forth below.

The appointment of a receiver is a matter within this Court's discretion. *See* FED. R. CIV. P. 66. Generally, "the appointment of a receiver can be sought by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer." *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997) (internal citations omitted).

Having heard the testimony and evidence presented at the hearing, the Court finds that the appointment of a receiver will preserve the property at issue here. Plaintiffs are creditors with security interests in improved real property and leasehold interests. Defendants are Borrowers as to the property. As is alleged in Plaintiffs' complaint, Plaintiffs provided proper notice to Defendants of the events of default under the loan documents and of Plaintiffs' intention to exercise all remedies available to them.

Pursuant to the loan documents, Defendants agreed that should they breach any covenant or agreement in the deeds of trust or mortgages and an election is made to seek the appointment of a receiver for the Property, Defendants expressly consent to the appointment of such receiver. Plaintiffs have valid claims for events of default under the loan documents against Defendants.

The property at issue in this lawsuit is vacant and in imminent danger of deteriorating, diminishing in value, and being subject to waste and potential destruction. The Court finds that Plaintiffs do not have an adequate of legal remedy, and there is no less drastic equitable remedy to protect both Plaintiffs' and Defendants' interests. Further, the Court finds that the appointment of a receiver will do more good than harm and is in the best interest of Plaintiffs and Defendants.

Having reviewed the information provided by Plaintiffs at the hearing before the Court, the Court finds that William J. Hoffman has significant experience as a receiver for properties similar to the ones at issue in this lawsuit.

ACCORDINGLY, it is THEREFORE recommended that William J. Hoffman, who is qualified to act as Receiver in this action, take possession, custody, and control of the property described below (the "Property") and that the following order of receivership be entered in accordance with the Court's authority under Federal Rule of Civil Procedure 66 and applicable authorities.

**1.     Description of the Property:**

| Borrower | Loan No. | Location/Unit No. | Note Date/Note Amount | Trust | Amount Due and Owing |
|---|---|---|---|---|---|
| S&A Fee Properties | 54-7605 | 2150 Northlake Pkwy., Tucker, GA/1113 | 6/16/98/$1,498,000 | Franchise Loan Trust 1998-I | 860,466.78 |
| S&A Fee Properties | 54-7606 | 6401 W. 95th St., Chicago, IL/1421 | 6/16/98/$3,486,000 | Franchise Loan Trust 1998-I | 2,002,421.86 |
| S&A Fee Properties | 54-7607 | 115 Veterans Pkwy., Normal, IL/1431 | 6/16/98/$2,506,000 | Franchise Loan Trust 1998-I | 1,439,549.01 |
| S&A Fee Properties | 54-7608 | 52554 US Hwy. 31 N., South Bend, IN/1521 | 6/16/98/$2,037,000 | Franchise Loan Trust 1998-I | 1,170,114.01 |
| S&A Fee Properties | 54-7609 | 1139 Raritan Rd., Clark, NJ/3181 | 6/16/98/$1,729,000 | Franchise Loan Trust 1998-I | 993,157.92 |
| S&A Fee Properties | 54-7610 | 720 Baltimore Pike, Springfield, PA/3941 | 6/16/98/$2,632,000 | Franchise Loan Trust 1998-I | 1,511,869.72 |
| S&A Fee Properties | 54-7612 | 7604 IH 35 N., Austin, TX/4453 | 6/16/98/$2,968,000 | Franchise Loan Trust 1998-I | 1,704,931.32 |
| S&A Fee Properties | 54-7613 | 10497 Gateway Blvd. W., El Paso, TX/4457 | 6/16/98/$1,834,000 | Franchise Loan Trust 1998-I | 1,053,425.30 |
| S&A Fee Properties | 54-7614 | 7101 Camp Bowie W Blvd., Fort Worth, TX/4481 | 6/16/98/$1,652,000 | Franchise Loan Trust 1998-I | 948,893.11 |

| | | | | | |
|---|---|---|---|---|---|
| S&A Fee Properties | 54-7615 | 721 N. Watson Rd., Arlington, TX/4489 | 6/16/98/$2,947,000 | Franchise Loan Trust 1998-I | 1,692,878.00 |
| S&A Fee Properties | 54-7616 | 3304 Troup Hwy., Tyler, TX/4498 | 6/16/98/$2,233,000 | Franchise Loan Trust 1998-I | 1,282,647.47 |
| S&A Leased Properties | 54-7617 | 3601 S. Wadsworth Blvd., Lakewood, CO/620 | 6/16/98/$1,063,000 | Franchise Loan Trust 1998-I | 610,625.97 |
| S&A Leased Properties | 54-7618 | 2015 Concord Pike, Wilmington, DE/811 | 6/16/98/$1,134,000 | Franchise Loan Trust 1998-I | 651,402.68 |
| S&A Leased Properties | 54-7619 | 4601 1/2 Kirkwood Hwy., Wilmington, DE/812 | 6/16/98/$979,000 | Franchise Loan Trust 1998-I | 562,308.84 |
| S&A Leased Properties | 54-7620 | 9900 4th Street, St. Petersburg, FL/1074 | 6/16/98/$1,109,000 | Franchise Loan Trust 1998-I | 636,989.34 |
| S&A Leased Properties | 54-7622 | 122 S. Michigan Ave., Chicago, IL/1426 | 6/16/98/$2,369,000 | Franchise Loan Trust 1998-I | 1,360,816.17 |
| S&A Leased Properties | 54-7623 | 1735 Route 46, Parsippany-Troy Hills, NJ/3162 | 6/16/98/$1,147,000 | Franchise Loan Trust 1998-I | 658,839.80 |
| S&A Leased Properties | 54-7624 | 40347 Ann Arbor Rd., Plymouth, MI/2314 | 6/16/08/$1,126,000 | Franchise Loan Trust 1998-I | 646,786.26 |
| S&A Leased Properties | 54-7626 | 1935 S. Glenstone Ave., Springfield, MO/2621 | 6/16/98/$1,054,000 | Franchise Loan Trust 1998-I | 605,445.45 |
| S&A Leased Properties | 54-7627 | 1800 Frontage Rd., Cherry Hill, NJ/3121 | 6/16/98/$907,000 | Franchise Loan Trust 1998-I | 520,967.84 |
| S&A Leased Properties | 54-7632 | 12505 E. Northwest Hwy., Dallas, TX/4409 | 6/16/98/$1,394,000 | Franchise Loan Trust 1998-I | 800,763.75 |
| S&A Leased Properties | 54-7635 | 1900 N. Central Expwy., Plano, TX/4485 | 6/16/98/$903,000 | Franchise Loan Trust 1998-I | 518,711.55 |
| S&A Fee Properties | 59-7628 | 2105 A & B Louisiana Blvd., Albuquerque, NM/3211 & 3212 | 8/21/98/$4,655,000 | Captec Franchise Trust 1999-1 | 2,724,096.44 |

The Receiver should take immediate possession, custody, and control of the Property described above and the personal property contained therein.

**2.   Receiver's Oath and Bond:**

Within three days of this appointment, the receiver should also post a bond from an insurer in the sum of $100,000 conditioned upon the faithful performance of the Receiver's duties. The Receiver's Bond and the Oath of the Receiver should be filed in accordance with the procedures of the District Clerk of the Eastern District of Texas.

**3.   Receiver's Fees:**

All fees and costs of the Receiver should be accounted for in the monthly financial report. Upon submission of the monthly report, without further Order of the Court, the Receiver should be

entitled to reimbursement of all receiver fees and expenses, from funds of the Receivership Estate for such time as is reasonable and necessary for the Receiver to accomplish the purposes and tasks set forth in this Order. Receiver expenses should include, but not be limited to travel, mileage, faxes, copies, photographs, printing and similar Receiver-provided benefits.

**4.      Receiver's General Duties:**

(A)     The Receiver should take immediate and exclusive possession, custody and control of all real and personal property including, without limitation, any related pledged business operated by Defendants (whether such business be managed by the named Defendants or their agents) and all monies therefrom, equipment, fixtures, furnishings, records, inventory, assets, royalties, rents, receivables, accounts, deposits, equities, and profits. The Receiver should care for, preserve and maintain the Property, make such repairs as are needed to keep the Property in good condition, incur any expenses necessary for the care, preservation and maintenance of the Property, and should pay the costs of such repairs from funds of the Receivership to the extent there are funds available.

(B)     The Receiver should be given the powers and authority usually held by receivers and reasonably necessary to accomplish the purpose of this Receivership including, without limitation, the specific power to:

(i)      Change any and all locks on the Property and limit access thereto;

(ii)     Maintain, protect, collect, sell, liquidate, or otherwise dispose of property; provided, however, that the Receiver should not sell or otherwise dispose of any real or personal Property without prior court approval for such sale or other disposition;

(iii) Take possession of all bank and other deposit accounts of the Defendants; open, transfer and change all bank and trade accounts relating to the Property, so that all such accounts are in the name of the Receiver; and make disbursements in payment of expenses incurred by the Receiver in accordance with this Order;

(iv) Hire, on a contract basis, professional, employees and other personnel necessary to manage and preserve the Receivership Estate;

(v) Retain existing employees of the Defendants or related parties as Defendant's employees in order to continue any business operations, in which case payroll taxes, workers compensation insurance, and related costs will be carried and reported as those of the Defendant, and not of the Receivership Estate. The Receiver may, at his sole discretion, carry all employees as those of any management company or other entity hired by the Receiver;

(vi) Hire, employ, pay and terminate servants, agents, employees, clerks and accountants; purchase materials, supplies, advertising, and other services at ordinary and usual rates and prices using funds that shall come into the Receiver's possession; collect or compromise debts of the Receivership Estate; incur risks and obligation ordinarily incurred by owners, mangers, and operators of similar enterprises, which in the Receiver's reasonable judgment, are necessary for the operation of the business, and no such risk or obligation

        incurred should be the personal risk or obligation of the Receiver but only that of the Receivership Estate;

(vii) Reject any leases or unexpired contracts of the Defendants that are burdensome on the Receivership Estate, upon Court approval;

(viii) Make and enter into leases for a term not exceeding one year, obtain and eject tenants, and set or modify rents and terms of rent without prior Court approval;

(ix) To take possession and control of all intellectual property, regardless of medium, including but not limited to; documentation, notes, correspondence, e-mail, web-sites, electronic publications, policies and procedures, training manuals and collateral material along with ancillary systems used to deliver said content to applicable audiences as the Receiver deems necessary.

(x) Immediately borrow from Plaintiffs, other creditors of the Defendants, or third parties on an unsecured basis and on such other reasonable terms as may be acceptable to the Receiver, funds to meet the capital needs of the Receivership Estate in excess of the income from the Receivership Estate, in which case the Receiver is further authorized to issue Receiver's Certificates, according to Section 17 of this Order, to secure such indebtedness.

(xi) Collect all rents, profits and income, which are now or hereafter may be due from the operation of any business connected with the Property and

      improvements thereon, including such rents, income and profits presently held in bank accounts for the Property.

   (xii) Employ and compensate unlawful detainer attorneys or eviction services with respect to the operation of the Property without prior Court approval.

 (C) The Receiver should not be obligated to file any federal or state income tax, returns, schedules or other forms, which continue to be an obligation of the Defendants.

**5. Overhead Expenses:**

All fees and expenses incurred by the Receiver that pertain solely to the Receiver's general office administration and/or overhead, including, but not limited to office supplies, employee wages, taxes and benefits and other charges should not be paid by the Receivership Estate unless incurred directly and solely for the benefit of the receivership estate.

**6. Inventory:**

Within thirty (30) days after qualification hereunder, the Receiver should file an inventory of all of the Property of which he has taken possession pursuant to this Order.

**7. Security Deposits:**

Any security or other deposits that tenants have paid to Defendants or their agents and that are not paid to the Receiver, and over which the Receiver has no control, should be obligations of the Defendants and may not be refunded by the Receiver without an order of this Court. Any other security or other deposit that tenants have paid or may pay to the Receiver, if otherwise refundable under the terms of their leases or agreements with the Receiver, should be refundable by the Receiver in accordance with the leases or agreements.

**8.     Monthly Statements:**

The Receiver should prepare and serve on all parties interim reports of the condition and operation of the Property in the Receivership Estate within thirty (30) days of the closing of each accounting period or month, until the Receiver is satisfied that less reporting is necessary or appropriate. At that time and upon prior notice in a Receiver's Report, the Receiver may report bi-monthly or quarterly, but no less often than quarterly. These interim reports should reflect the Receiver's fees and administrative expenses, including fees and costs of accountants and attorneys authorized by the Court, incurred for each reporting period in the operation and administration of the receivership estate. The Receiver should not be required to, but as reasonably necessary may, follow generally accepted accounting principles, or use auditors or accountants in the preparation of his reports to the Court. Upon service of each statement, the Receiver may disburse from estate funds, if any, the amount of each statement. Notwithstanding periodic payment of fees and expenses, all fees and expenses should be submitted to the Court for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report.

**9.     Management of the Property:**

Subject to further Order of this Court, the Receiver should operate and manage the Property including, but not limited to, collecting rent, taking possession of all accounts containing either security deposits or rental deposits. The Receiver may employ such agents, independent contractors, employees and management companies as may be needed to assist Receiver in managing the receivership Property including, but not limited to, a company in which Receiver is a principal,

provided the amount of compensation paid to any such agent or firm must be comparable to that charged by similar entities for similar services, and Receiver should pay for them at the ordinary and usual rates out of the funds that shall come into the Receiver's possession and should do all things and incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises as such Receiver. No such risk or obligation so incurred should be the personal risk or obligation of this Receiver, but should be the risk and obligation of the Receivership Estate. All who are acting, or have acted, on behalf of the Receiver at the request of the Receiver are protected and privileged with the same protections of this Court as the Receiver has. This Court indemnifies and does not hold Receiver and its affiliates liable for costs, claims, causes of action, damages and issues arising from the American Disabilities Act and any environmental suits.

10. **Police Assistance:**

The Receiver may request assistance of law enforcement officials when taking possession of the Property, or at any other time during the term of the Receivership, if in the opinion of Receiver, such assistance is necessary to preserve the peace and protect the Receivership assets.

11. **Bank Accounts:**

The Receiver should take possession of receive from all depositories, banks, brokerages, and otherwise, any money on deposit in such institutions belonging to or arising from the operation of the Receivership Estate, whether such funds be in accounts titled in the name of the entity or not, and Receiver may indemnify the institution upon whom such demand is made, and is empowered to open or close any such accounts. Receiver should deposit monies and funds collected and received in connection with the Receivership Estate at federally-insured banking institutions or savings

associations, which are not parties to this case. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized should be held by the Receiver pending further orders of this Court.

**12.    Use of Funds:**

The Receiver should pay only those bills that are reasonable and necessary for the operation of the Receivership Estate and should allocate funds in the following order of priority:

(1) the costs and expense of operation the Receivership Estate, including the fees and expenses incurred by the Receiver in managing the estate;

(2) utilities, insurance premiums related to the protection and interest of the Receivership Estate, general and special taxes or assessments levied on the real property and improvements thereon;

(3) payments to creditors, which relate to periods prior to the appointment of the Receiver and that are, in the Receiver's judgment, bona fide expense, reasonably necessary for the continued operation of the Receivership Estate; provided however, that Receiver should not pay any tax liability of any Defendant arising prior to the inception of the Receivership Estate with the exception of any federal or state employee withholdings arising from the pay period immediately prior to the inception of the Receivership Estate; and

(4) the creation and retention by the Receiver of reasonable working capital fund.

**13.   Utilities:**

Any utility company providing services to the Property, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services, should be prohibited from discontinuing service to the Property based upon unpaid bills incurred by Defendants. Further, such utilities should transfer any deposits held by the utility to the exclusive control of such Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services. New accounts under the name of the Receivership Estate should be established within 30 days. Utility companies should be prohibited from discontinuing service while the new Receivership accounts are in process of being established. The Receiver should hand-deliver, fax, or email a copy of this Order to all affected utilities within ten (10) business days after the Receiver files his oath and bond. When an event terminating the receivership occurs, the Receiver should hand-deliver, fax or email a written notice to all affected utilities within ten (10) business days after the termination occurs.

**14.   Mail:**

The Receiver may issue demands in the name of the Receivership upon the U. S. Postal service to gain exclusive possession and control of such postal boxes as may have been used by Defendants for the receipt of rent and other mail, and may direct that certain mail related to the Property and its business be re-directed to Receiver.

**15.   Insurance:**

The Receiver should determine upon taking possession of the Property whether in the Receiver's judgment, there is sufficient insurance coverage. With respect to any insurance coverage

in existence or obtained, the Receiver and the property management company, if one exists, should be named as an additional insured on the policies for the period that the Receiver should be in possession of the Property. If sufficient insurance coverage does not exist, the Receiver should immediately notify the parties to this lawsuit and should have thirty (30) calendar days to procure sufficient all-risk and liability insurance on the Property (excluding earthquake and flood insurance) provided, however, that if the Receiver does not have sufficient funds to do so, the Receiver should seek instructions from the Court with regard to whether insurance should be obtained and how it is to be paid for. If consistent with existing law, the Receiver should not be responsible for claims arising from the lack of procurement or inability to obtain insurance.

**16.  Legal Counsel:**

The Receiver may hire independent legal counsel if needed by the Receiver, and pay such persons for their services at such rates as the Receiver deems appropriate for the services provided.

**17.  Receiver's Certificates:**

In the event that income from the operation of the properties is insufficient to meet normal operating expenses and costs, the Receiver is authorized to borrow money and to issue Receiver's Certificates to secure such indebtedness.

**18.  Prohibited Agreements By or With Receiver:**

The Receiver should not directly or indirectly agree to, or enter into contract, arrangement, or understanding with any party, or agent, or assignee thereof, concerning the following:

(A)  The Receiver's role with respect to the property following a foreclosure, trustee's sale or termination of the case, without specific court permission;

 (B) How the Receiver will administer the receivership, or how much the receiver will charge for services, or pay for services to appropriate and/or approved third parties hired to provide services;

 (C) Who the Receiver will hire, or seek approval to hire, to perform necessary services to administer the receivership;

 (D) The making of expenditures for any capital improvements to the Property.

**19.** **Plaintiff to notify Receiver of the Appearances of all Parties:**

Plaintiffs should promptly notify the Receiver of the names, addresses, and telephone numbers of all parties and their counsel who appear in the action, so that the Receiver may give notice to all parties of any matter affecting the receivership.

**20.** **Instructions in the Event of Foreclosure or Cure:**

Plaintiffs should notify the Receiver within 48 hours of any event, of which Plaintiffs have knowledge that terminates the receivership. Upon receipt by the Receiver of a Trustee's Deed Upon Foreclosure, or notice from Plaintiffs that Defendants have cured the defaults existing under Plaintiffs' loan documents, or that Plaintiffs have accepted a deed in lieu of foreclosure, the Receiver should turn over possession, custody and control of the Property to either Plaintiffs, Defendants, or to the successful purchaser (whichever is appropriate) without further order of this Court. The Receiver should then be divested of possession, custody and control of the Property and, if consistent with existing law, the Receiver should have no further liability as to the Property. Discharge of the Receiver should require a Court order after a properly noticed motion approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond.

**21.   Instructions in the Event of a Bankruptcy Filing:**

(A)   Plaintiffs' Duty to Give Notice of Bankruptcy:  In the event that a bankruptcy case is filed by any Defendant during the pendency of this Receivership, Plaintiffs must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of Plaintiffs' receipt of notice of the bankruptcy filing.

(B)   Receiver's Duties if Bankruptcy is Filed: Upon receipt of notice that a bankruptcy has been filed that includes as par of the bankruptcy estate any property that is the subject of this Order, the Receiver should do the following:

1)   Immediately Turn Over the Property if No Relief From Stay and Turnover will be Sought: The Receiver should immediately contact the part who obtained the appointment of the Receiver, and determine whether that party intends to move in the Bankruptcy Court for an order for both: (a) relief from the automatic stay, and (b) relief from the Receiver's obligation to turn over the property (11 U.S.C. Section 543).  If the party indicates no intention to make such a motion, then the Receiver should immediately turn over the Property of the appropriate entity (either the trustee in bankruptcy, if one has been appointed or, if not, then to the debtor in possession), and otherwise comply with 11 U.S.C. Section 543.

2)   Receiver to Remain in Possession and Preserve the Property, Pending Resolution of Motion For Relief From Stay and Turnover: If the party who obtained the Receivership expresses an intention to immediately seek relief

from both the automatic stay and the receiver's obligation to turn over the property, then the Receiver is authorized to remain in possession and preserve the property pending the outcome of those motions (11 U.S.C. Section 543 (a)). The Receiver's authority to preserve the Property is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may make disbursement, but only those, which are necessary to preserve and protect the Property. The Receiver should not execute any new leases or other long-term contracts. The Receiver should do nothing that would affect a material change in circumstances of the Property.

3) Receiver is to Turn Over Property if No Motion for Relief From Stay and Turnover is Filed in the Bankruptcy Court Within 10 Court Days After Notice of the Bankruptcy Filing: Notwithstanding the above, if the par who obtained the receivership fails to file a motion within 10 court days after their receipt of notice of the bankruptcy filing, then the Receiver should immediately turn over the Property to the appropriate entity (either the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. Section 543.

(C) The Receiver is Authorized to Retain Legal Counsel to Assist the Receiver with the Bankruptcy Proceedings.

**22.     Receiver's Final Report and Account:**

As soon as is practicable after the receivership terminates, the Receiver should fie, serve, and set for hearing in this Court his Final Report and Account. Notice must be given to all persons of whom the Receiver is aware who have potential claims against the receivership estate. The motion to approve the final report and accounting, and for discharge of the Receiver, should contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, the net amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the receivership, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the receivership estate. The bond of the Receiver should be canceled upon the Court's discharge of the Receiver.

**23.     Instructions from the Court**:

The Receiver and the parties to this case may at any time apply to this Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform the Receiver's duties properly. The Court may grant any relief requested by the Receiver for which Court approval is required, without any further notice of hearing, unless an objection to the requested relief is filed with the Court and served on the Receiver, his counsel, if any, and counsel for the Plaintiffs within twenty days after filing and service of the Receiver's request. Further, in the event of an objection to any Receiver's proposed action requiring Court approval hereunder, then the Court should promptly hold a hearing on such objection upon at least three (3) days prior written notice to all objecting parties.

**24.   General Provisions:**

(A)   No person or entity should file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action provided, however, that no prior court order is required to fie a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

(B)   The Receiver and its employees, agents, attorneys and all professionals and management companies retained by the Receiver should have no personal liability in connection with any liability, obligation, lien or amount owed to any of Defendants' creditors because of its duties as Receiver. Nothing in this Order should grant any right to trade creditors or general unsecured creditors, whose rights should be solely determined by the Court issuing this Order.

(C)   The Receiver and its employees, agents and attorneys should have no personal liability, and they should have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or wilful misconduct, malicious acts and/or the failure to comply with this Court's orders.

(D)   Nothing contained in the order of the Court should be construed as obligating the Receiver to advance its own funds in order to pay the costs and expense of the Receivership that have been approved by Plaintiff and the Court.

(E)   Defendants and Plaintiffs should indemnify, defend and save the Receiver harmless from all suits in connection with the Property and from any and all liability, including

      for damages to Property, and personal injury or death related to the Property, except for liability arising out of the Receiver's willful misconduct or gross negligence that is not the result of Defendants' or Plaintiffs' instruction of direction.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C). ***During this period, the parties are expected to follow the recommendations of the magistrate judge until further notice from the Court.***

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 26th day of August, 2008.**

                                                                DON D. BUSH
                                                                UNITED STATES MAGISTRATE JUDGE